Mr. Hillis and Mr. Reitz, can you hear me? Yes, Your Honor. Very good. Good morning to each of you. The court calls case number 20-2463, United States v. Christian Lovies. We'll begin for the appellant, Mr. Hillis. Good morning. May it please the court. Counsel, my name is Daniel Hillis. I represent Mr. Lovies on this appeal. I'm with the Federal Public Defender's Office. He raises three issues. I'm going to take them out of order in the interest of time, should I not get through everything on the Batson challenge. So I'll begin with the second issue. And for the second issue, we are, of course, concerned that the district court improperly applied the two-level enhancement for using the minor, LM, to commit the offenses. Of course, to use a minor to commit the offense such that you can get the enhancement, there has to be evidence that the defendant directed or recruited the minor to help commit the offenses. Here, there was no such evidence. The district court pointed to none in any event during the sentencing hearing. The district court relied on the fact that the minor was proximate to my client, but when asked, the government could not explain how it was that my client directed anybody. The government acknowledged that it didn't know who told LM to accompany Mr. Lovies, if any. So if that's the extent of the evidence, we have proximity. And of course, the guideline, the application note, the commentary, the text itself, doesn't talk about proximity. And there is no case that accepts proximity as a benchmark. What about the judge's findings that he was relying on the partnering with the minor? And based on what he observed on the video that Lovies was directing the minor, in addition to the fact that they stole the car together in Milwaukee, they fled to Indianapolis, they were together when they kidnapped and carjacked Butler, LM is the one who pushed her in the back of the car. What about those additional factors? That sounds like more than just proximity. Well, they are largely proximity, Your Honor, just to be cited. So we cannot assume a partnership just because of the use of the word partnership by the judge to describe anything.  You're not challenging that under our law, that partnership is equivalent for the enhancement, are you? No, I'm saying there's no partnership that existed, Judge. There are no facts to suggest there was a partnership. There are facts to show that they were together when different things happened. There's nothing to show that he recruited her to go to Indianapolis. She was asked, I think, by her boyfriend to attend or volunteered herself. There's nothing to say that he used her to help steal the car. She, again, was with him. That's correct. But there's nothing to show that he partnered with her to commit any of these activities. The criminal conduct was engaged by Mr. Lovey's. What we're missing are facts to show that there was a partnership, recruitment, direction of conduct by Mr. Lovey's towards this individual LM as a minor such that the enhancement can properly be given. You're correct. She was with him while some of these things happened. But that does not demonstrate a partnership, nor does using the word partnership established. If there are no further questions on that, I would just observe that even under Ramsey, which is a case that used a minor. There's facts in Ramsey that would say that the individual recruited his brother, used his brother to complete the drug sale with the undercover agent. When we have facts like that, we would accept that the enhancements properly applied as in Ramsey. But we're missing them here and therefore the enhancements improperly applied in the case should be remanded on that basis. Turning then to the third issue in the case, we would also draw the court's attention to the improper use of the leadership. Now, I'll begin by saying the government says harmless air and appoints to the judges single sentence. I'd impose the same sentence. And that sort of lack of reasoning is in conflict with other circuits. The 10th Circuit in particular has taken a dim view to this sort of boilerplate offering by a judge to appeal, prove some decision. And in fact, the government has, even with those statements, basically confessed air. I believe it was in the black decision in the 10th Circuit. But there's also the pain of her Melisio case. He swine in here. The judge didn't effectively explain the sentencing rationale which is required under United States versus Gaul. So this court should not embrace the boilerplate offering by a district court. It shouldn't set instead insist on reasoning like Gaul requires. And here there's inadequate reasoning to show that there was any leadership by my client of any. Mr. Lovey's didn't need anyone. They were co-equals before individuals who committed the offenses. They did things at the same time. They were all involved in it. There's no hierarchy. There's no claim to a greater share of spoils and recruitment. My client did not recruit L.M. or anyone else. People joined together. The offenses unfolded. There was no plan. There was nothing to show leadership of anyone. So when there is no recruitment of accomplices, no claim to larger share of proceeds, no evidence of greater amount of planning or participation by one individual relative to the others, no greater degree of control. We have no basis to impose the leadership. Multiple people exerted control over the victim, Ms. Butler. It doesn't show that Mr. Lovey's had some greater power over her than anyone else. So under the harness case in particular, we would draw the court's attention to the misguided notion. The control over property demonstrates a basis for the leadership. So the 11th Circuit said control over property is different than control over a participant. And here, if my client had control over the car, over the gun, he himself directed the victim into the car.  They're showing control over property, and those things would be insufficient to support the enhancement. And so we'd ask the court to disregard the boilerplate statement that I give the same sentence and to instead insist on clear rationale that is a correct application. There are no questions on either of the two enhancements. I'll now turn to the Batson challenge, which is, of course, the most significant issue in the case by way of it affecting whether or not he gets a new trial, and it's independent of the sentencing issues. So the court is well familiar with the three factors necessary to establish the Batson challenge. The government disputes that there's a private facie case of discrimination, and it says that arguably the district court doesn't even need to do this as a matter of judicial economy. And it points to three cases that suggest that having taken a black person off the benign, that it is okay and we don't need to consider much further in that regard. But those cases are unpublished. They're not from the Seventh Circuit. One of them refers to the matter in a footnote. They're not persuasive, but most importantly, they're not consistent with Supreme Court precedent in Batson. And so we should reject the government's effort to say that we don't need to look so much at the first factor. Mr. Hillis, in order to establish a private facie case, you have to raise a, I think the case law says, a mere inference of a discriminatory purpose by the prosecutor in striking the African-American juror. What was argued to the district court here that raised that mere inference, other than the fact that he was an African-American in the veneer? Right. So there's a bit of a problem on the timing and the explanation that's given because, of course, the judge is supposed to give the defense an opportunity to say what the bases are in response to the government's assertions. So the government asserted that there was drowsiness. And then the district court asked for the government to respond. And we think that's an implicit ruling that there was a prima facie case. But the additional. The district court asked the government to respond to the prima facie case argument. I don't I don't think that's an implicit ruling that the prima facie case was met. Well, there's no need to have an explanation in the rejoinder if there's no prima facie case. The district court could just say so. But by asking for the explanation. But the district court before ruling wanted to hear from the government. So I think that's a bit of a stretch of an argument. But go ahead. Go ahead with your with what you think was raised before the district court to establish the prima facie case in the first part. I know you've made some additional arguments here. In comparison, comparing to other jurors and comparing to white jurors. But those weren't made before the district court. That's where I'm going. Well, at page 83 in the voir dire transcript, there is additional information other than the person being black. Of course, my client's lawyer explained that he did not observe the drowsiness. And so the district court should take its own observations into consideration for Batson and Miller L2. There was a claim about lack of eye contact by the juror with the prosecutors. And I believe the defense counsel pointed out that that was universal. He did not have the juror and I had much eye contact with anyone. The posture of the juror didn't indicate disinterest. And the juror said nothing to indicate that he couldn't serve. So those are all things that are right. Hard on the heels of the judge's determination of the Batson issue. These are additional factors the judge should have considered, but the judge didn't. And that's a problem under Miller L2 as well as Batson. It seems to us, Mr. Holtz, from my read of the transcript and thanks for pointing us to those pages. It seems what happened to me in my to my eye here is that. The three steps just collapsed and the district court just essentially functionally kind of fast forwarded, if you will. The care on the three steps, starting with the prima facie case, etc. That just kind of didn't happen. The court just kind of went right to the bottom line. You think that's a fair reading of what transpired? I do. I think it's a problem as well. OK. And so help me on that on that part of it. Why is it legally problematic? The proper course, the better course, maybe to start at step one and just work your way right through, as you well know, and you've articulated. But why does it become legally infirm, given what we have in the transcript here? Procedural protections protect substantive rights, Judge. We have a system in place under Batson, and it's not a lengthy thing. Three steps just followed by following them in sequence. Then we know that you establish a prima facie case. We know the next thing by going sequentially as government offered an adequate explanation of a nondiscriminatory reason. And then, of course, the third thing, did the district court consider all of the relevant evidence to reach a conclusion? If we are collapsing, we are winding up with a process that's very different from what the Supreme Court has carefully articulated in Batson to try to uproot discrimination. We are depriving my client of the chance to explain and provide a rationale that is sufficiently digested by the district court and then adequately considered and explained. Collapsing the process makes it a defective process. Ultimately, then, we're left with a record like this, where it looks like a little was said here, a little was said there. Maybe things weren't articulated as fully. There's a reason they could have been articulated more fully, and that is if Batson had been complied with. So under Miller L2, the judge didn't consider all that he was supposed to. Under Batson, the framework wasn't followed. If we're not to respect Batson, then this is a perfectly acceptable process. We're good here. But if the Supreme Court has said, here's what Batson is and has revisited it in Snyder, Hernandez, Flowers, the process is an important process, and we should not be able to collapse the process and disregard infirmities that come as a consequence. So your point then, taking one next step, must be, and I think it's a fair one, that is that on that first step, on the prima facie case in the mere inference point that Judge St. Eve was raising, what you're saying is there would have been a colloquy between the parties. There would have been the proffered showing. There would have been an opportunity to respond to it. A factual record would have been made, and that very same factual record would have provided the foundation, at least in part, for the court working its way through the second and third aspects of the test. Yes, Judge. And otherwise, we don't have the chance to make the distinctions that are necessary to rejoin the prosecutor's efforts to say that this is a non-discriminatory reason. We can't adequately compare the jurors, put that information from the judges as fully as we need to. And of course, that leads us to our comment briefly on the Jones case. Jones is a case the government relies on greatly in its brief, and it's about just a slumbering juror. Well, here we've got multiple things that lead to the defense trying to say that this juror, it's not just about drowsiness. And please trust your own eyes on this, Judge. Nobody else saw this. We rejected the efforts to take this drowsy juror off of page 79, and now here we are breathing new life into this. And we can have, in addition to that, other factors the court should consider, but none of that happens, Judge. And I think that that is a problem. With that, I reserve the balance of my time. Thank you, Mr. Hillis. Mr. Reitz, we'll go to you. May it please the Court. Brian Reitz for the United States. I would like to start with the Batson claim and then move to the two sentencing issues. This is a relatively straightforward Batson claim with a relatively straightforward appellate resolution. The third step of Batson depends on the striking party's credibility. Here, the district court judge made a clear, factual finding that the prosecution's reason was credible. That gives this court no basis to reverse unless Mr. Lubbez can show that reason was either completely outlandish or there's evidence demonstrating its falsity. He can make neither showing. First, as to the completely outlandishness, I mean, frankly, it may be unfortunate, but the federal reporters are full of cases of jurors being struck because they were inattentive. And this court has handled cases where the jurors were sleeping. We don't think that Mr. Lubbez is really relying on that factor. As to the second factor, Mr. Lubbez cannot show evidence demonstrating its falsity. In fact, the one factor here where I think this case is a little different is the court doesn't even have to rely on what the government said below. So the government said this juror was disinterested and sleeping. I would like to point out what the other parties present in the courtroom said about those two facts, starting with this interest. OK, the court on page 81 of the quiet dire transcripts said, quote, that juror didn't say a word. On page 83, the judge said he didn't seem to be participating at all. Mr. Lubbez attorney on page 81 said the juror didn't say a word the whole time we were here. On page 83 said he didn't make eye contact with the government. Also didn't see him making eye contact with me either. So everybody in the courtroom accepted it as true that this juror was uninterested. Therefore, that that factor supports the government strike now on the sleeping. It's, of course, true that only the government saw the juror sleeping. But I think it's important here to point out what the other party said as well. The court said he didn't see the juror sleeping, but denied the strike because, quote, I thought I could keep him awake, which at least gives some implicit indication that that juror was not paying attention. The defense, on the other hand, said I did not notice the sleeping, but, quote, it's certainly possible, which is quite far from the disputation of what the government was saying. So under the clear standard of view, there is no basis for this court to reverse. Now, with that, I want to answer your question and then get to your question to those. That's the chronicle chronological order of those two. Judge St. Eve about the prima facie case. No, Mr. Lovey's said nothing beyond the striking of the black juror at the prima facie stage. When the judge moved on to opening the floor for the defendant to make an argument for purposeful discrimination, Mr. Lovey said more things. I would like to go through those because I don't think they're particularly pertinent either. One, there's four things claimed now. The juror avoided contact. I contact with the government and the defendant. Well, that does nothing but support the government's claim. The juror said nothing to indicate that he couldn't fairly serve. That conflates strikes for cause and peremptory strikes. Three, the posture was insufficient to show disinterest. Well, peremptory challenges are based on instinctual opinions. So the fact that the defendant had a different view of what the posture meant is not terribly pertinent. Last, he didn't see the juror sleeping. That, of course, doesn't dispute the disinterest of the juror. And there's no assent from both parties for peremptory strikes. It's an instinctual individual determination to make a prima facie case. It's true. It would have been simple. All the defendant would have needed to say is the government didn't show that this juror was more disinterested than the other jurors that it did not strike. But Mr. Lovey's never said that, presumably because the record didn't support that. With that, I'd like to turn to Judge Schutter's question. Before you move off of that, a quick question. What about Mr. Hillis's argument that if you don't go through the steps that have been articulated in Batson, that you don't have the opportunity to develop the record so the defendant can be in the position to make the falsity challenge? Your Honor, yes, that's essentially what I was going to respond to Judge Schutter's point. So first of all, I think this argument is contra Hernandez. Hernandez says when the first and second steps are skipped to the third, then the appellate courts don't have to consider them. They can just consider the third. So if that's the point and if Judge Schutter, if you think that the analysis would collapse the third, so be it. Under clear Supreme Court precedent, that means we analyze the third step. So Mr. Lovey's argument on that is legally incorrect. As far as factually, the judge gave Mr. Lovey's an opportunity before making a ruling to state on the record what Mr. Lovey's thought was the reason that it was discriminatory. Mr. Lovey's took that opportunity and gave these rationales. So it is factually incorrect to say that Mr. Lovey's had no opportunity. He was given an extra opportunity to respond to the race neutral reason given by the government. So when you when you're talking about Hernandez, you're talking about the kind of mootness principle that's coming out of the right, the mootness. Yes, Your Honor. So Hernandez says if the party skipped to the third prong of Batson, then the first two prongs are irrelevant. Everything collapses into the third. Yeah, I think Mr. Hillis is I don't know that Mr. Hillis is joining issue with that so much. He can correct me if I'm wrong. I mean, the the case law is what the case law is. I think what he's saying is that it's a three step test for a reason. Yeah, go ahead. Yes, Your Honor. It's not like the case law is nowhere near as solicitous as let me think of it. Take like qualified immunity in Pearson. You know that world, Mr. Right. It's not it's nowhere near that solicitous on the three steps of Batson. So I think to start, I would like to I mean, I think I disagree with your honor that this was collapsed. If you look at the transcript, the judge engages on the prima facie question first. After Mr. Lovey's gives his prima facie reason, the judge says inquires to the government. The government says why there's no prima facie case. The judge finds there's no prima facie case. After that, the government gives its race neutral reason. After that, Mr. The court opens it up for Mr. Lovey's to give an explanation, an argument why there is purposeful discrimination. And at that point, the court says makes a finding about the prosecutor's credibility. So I think this is a pretty clear one, two, three Batson analysis to the extent it's somewhat short. It's because Mr. Lovey's gave really no reason to think it was discriminatory in moving back. So with that factual analysis out of the way, I'd like to move back to the law. As far as solicitous, I. If the point is the court skipped to the third step, then that's all that matters. We take that as true. If the point is that the court didn't give Mr. Lovey's an attempt or an opportunity to get state his reasons. That is contradicted by by the clear record that the court opened it up for Mr. Yeah. So I guess the the way to frame the concern that I have is is this that the record is what it is. And I and the arguments you're making, Mr. Wright's fair about our fair. The transcript says what it says that way. But when we sit down to write an opinion here. Right. We have we need to address what should happen under Batson. And the question that that concerns me goes to the point that Mr. Hillis is making. That is that in tomorrow's trial or next week's trial. That district courts. Take care and make a clean record on each of the three steps of Batson. They're not there by happenstance. They're not there for some reason that doesn't make any sense. It's a three prong test for a reason. And so the question that I have for you, do you disagree with that? No, we, of course, agree. And we think that happened here, Your Honor, if I may. So on page eighty one. No, excuse me. I think it's page eighty two. The court says I don't think you've made a prima facie case. The next day, where were they asked to? Where were they asked to? Well, Mr. Ford, Mr. Lovey's raised the objection. So this all started because Mr. Mr. Lovey's made the objection. And it's part and parcel. When a party is making an objection, they should explain the reason for the objection. But the fact is, he did not. He simply said there is a black juror struck, which is insufficient. There is nothing in precedent that requires a defendant to have multiple opportunities to explain his prima facie case. He was given. No, no, no. All right. I hear it. But I think Mr. Hillis's point is if you focus on page eighty one. All right. Fine. Raise a Batson challenge. Now let's work through the Batson challenge with discipline and rigor. Let's start it. Let's start at step one. What's the prima facie case? His I think his point is that the transcript from eighty one, eighty two, everything gets. It's like the fast forward button, you know, here. I mean, if that is true, it's because Mr. Lovey's just completely failed to establish a prima facie case. It's the first step. But I don't think that's right, because we have clear judicial findings about all three prongs. We have a finding that there's no prima facie case. We have a finding that there's a race neutral reason. And we have a finding on the third prong. There's the prosecutor's reason was credible. That's what the precedents require. If we could. In some cases, this may need to be more spread out. But the fact is, the reason it wasn't spread out here and gone into in fuller detail is because Mr. Lovey's objection was so lacking. Now, I know that he wishes that he could buttress that on appeal, but he can't. He had his opportunity to explain what his prima facie case was. And he said he's a black gentleman. The government is striking him. That is insufficient under the law. The government pointed that out and the court found that at any point in time. There there's a back and forth at any point in time. Mr. Lovey's was represented by counsel. The council could have chimed in and said, well, there's these other factors. Here's this comparison to jurors that the government didn't strike. None of that occurred because none of it is evidently true. So Mr. Lovey should not be able to benefit on appeal because he failed to make a sufficient record. Now, if if your honor's concern is the court should slow down. I think it's fine to say in future cases that we can delineate this a little bit more. But it's sort of a necessary predicate that there is a prima facie analysis or reason given. I mean, I think, again, going back part of the reason problem here is the court engaged even more than it needed to, because the court could just stop and said no. Striking a black or juror is not a prima facie case. Your bats and clay claim fails that that would that would be affirmative. Right. The court gave Mr. Lovey's more opportunity than he needed to. So with that said, I'll just quickly talk about the two guidelines enhancements. So, first of all, Mr. Lovey's heightens the the the necessary requirement for use of a minor. It's only that the partner or, you quote, affirmatively involve a minor. So Lovey's stolen infinity with LLM with LLM carjack Butler with LLM LLM kidnap Butler with discuss killing Butler with LLM shared the gun with LLM and then carjack a third part with LLM. So any assertion this wasn't a criminal partnership, it just cannot withstand a view of the facts of this case. I, there's no requirement, just like a conspiracy case. There's no requirement. There's a formal partnership agreement. We look at the facts and this conduct clearly, clearly involved in minor on the role in the fence. I think I'll mostly rest on my brief, except I have to point out that Mr. Lovey's here claim that he didn't recruit anyone. That is incorrect. He recruited Hudson and Schultz as the phone conversations called. So Mr. Lovey's recruited 67 percent of the other participants in this crime. Beyond that, we think a brief is sufficient and this court should overrule its harmless error precedents. So if the court has no further questions, we're happy to rest on our brief. Thank you, Mr. Wright's Mr. Hillis rebuttal. Recruited someone by asking them to leave with him from Milwaukee. That doesn't show that they are then planning to go engage in offenses elsewhere. So leaving together, asking someone to leave with you is not recruitment to participate in a criminal offense. The government is saying there's no authority that require the district court to do more by way of consulting with my client's lawyer to establish a case. I would only point out the McAllister Miller cases, which are both cited in our brief. It says the district court must consult with defense counsel before rule that didn't happen. He went straight to the government. The government offers reasons. The judge accepted. My client should be given a chance under the framework of bats, which needs not to be slowed down, but complied. And it wasn't what it's not. We have the problems that we have here. The government's able to benefit from a less developed record. And to the detriment of somebody who has a legitimate claim to have more than one black juror, as opposed to they already have one. Nothing to see here. Let's move on. So we need to respect the Batson process. It wasn't Mr. Lovey's finally says that he would be able to compare the other jurors with regard to eye contact, participation, all these things. The government says the record doesn't say anything about my client really wasn't given the chance to make those comparisons, to say those things, do those things. The government doesn't say how those other people in the juror pool will participate more, making more eye contact, et cetera. So we don't really have a means to make that comparison here on this record. And then again, that's a problem because the way that things were handled. So it's more than considering the prosecutor's demeanor. Miller L says, consider all of the relevant factors that didn't happen. With this, we ask the court vacate. Thank you, Mr. Hillis. Thank you, Mr. Wrights. The case will be taken.